UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

KATHRYN HUTCHISON

    Plaintiff,

v.                                                                                                          2:20-cv-01121-DHU-GJF

BOARD OF EDUCATION OF ALAMOGORDO
PUBLIC SCHOOL DISTRICT #1, ALAMOGORDO
PUBLIC SCHOOLS, and JERRETT PERRY and
COLLEEN TAGLE, *in their individual
capacities*.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on (1) the Board of Education of Alamogordo Public School District #1, Alamogordo Public Schools, Jerrett Perry and Colleen Tagle ("Defendants")s' Motion for Summary Judgment (Defs.' Mot., Doc. 20) and (2) Kathryn Hutchinson ("Plaintiff")'s Motion for Partial Summary Judgment on Due Process Claim (Pl.'s Mot., Doc. 55). After considering the motions, evidence, and arguments of the parties, the Court concludes that both motions will be **DENIED**.

### FACTUAL BACKGROUND

The following facts are either undisputed or construed in the light most favorable to the summary judgment nonmovant for the purpose of determining the pending motions for summary judgement. These facts are not to be construed as findings of fact by the Court for the purpose of determining the merits of Plaintiff's claims or Defendants' defenses.

For 17 years, Plaintiff was a custodian employed by Alamogordo Public Schools ("APS"). Defendants' Undisputed Material Fact ("Defs.' UMF") ¶ 1, Doc. 20; Affidavit of Colleen Tagle ("Tagle Aff.") ¶ 9, Defs.' Ex. 1, Doc. 20. Under the terms of the Collective Bargaining Agreement ("CBA") covering Plaintiff's employment, Plaintiff had a 234-day work contract, as did all employees holding the position of custodian. CBA, Pl.'s Ex. 1 at 24, Doc. 26 ("All custodial … employees' work year shall be two hundred thirty-four (234) days.").

On Plaintiff's May 19, 2020 annual evaluation, the principal of North School Elementary, Reynaldo Gomez, rated her as "proficient" in every area. Declaration of Kathryn Hutchinson ("Hutchinson Decl.") ¶ 3, Pl.'s Ex. 3, Doc. 26. Principal Gomez placed no negative information in Plaintiff's file. *Id*.

About a month later, on June 19, 2020, Colleen Tagle, an APS deputy superintendent, scheduled a June 23, 2020, meeting with Plaintiff to discuss Plaintiff's performance. Defs.' UMF ¶2; Tagle Aff. ¶ 10. Tagle informed Plaintiff that the meeting "may involve disciplinary action," and encouraged Plaintiff to bring a union representative. 6-19-20 Email from Colleen Tagle to Kathryn Hutchinson, Defs.' Ex. A, Doc. 20 at 24. At the June 23 meeting, Tagle met with Plaintiff, her union representative, and Plaintiff's immediate supervisor. Defs.' UMF ¶ 3.

During the meeting, Tagle told Plaintiff that that she had performance issues and claimed that Plaintiff's lack of effort was "legendary." Hutchinson Decl. ¶¶ 4, 6. Tagle claimed that witnesses said Plaintiff videotaped other custodians and reported that Plaintiff was not being a team player. *Id*. ¶ 7. Tagle also brought up "rumors" that Plaintiff could not operate a mower or use certain cleaners and questioned Plaintiff about an ADA accommodation. *Id*. ¶ 4. Plaintiff denied that she was incapable of doing her job. *Id*.

Tagle then told Plaintiff that she was going to reduce Plaintiff's employment from a 234-day contract to a 193-day contract because Plaintiff had not demonstrated that she was a team player. *Id*. ¶ 9. When Plaintiff pointed out that Tagle had previously promised Plaintiff a year to demonstrate teamwork, Talge responded that "in only one week I have had complaints about your attitude and work ethic." *Id*. When Plaintiff mentioned her positive review from Principal Gomez a month earlier, Tagle responded APS "could do an investigation" which "would not paint the picture Plaintiff would want in her permanent file." *Id*. ¶ 10. Tagle claimed that she was empowered to "launch full blow investigations" and "interview everybody." *Id*. ¶ 13.

Tagle also told Plaintiff that she was being placed on paid administrative leave and, while other custodial employees would be paid through June, Plaintiff would receive extra paid leave to account for her later start date. Defs.' UMF ¶ 4(b). Tagle further stated that when Plaintiff returned, on the 193-day contract she would be placed on a 90-day performance plan, have a new supervisor, and work somewhere other than North School. *Id*. ¶ 4(c); Hutchinson Decl. ¶ 11. When Plaintiff asked about a three-day bonus payment promised to all employees, Tagle responded "that is not for you because you are going on a 193-day schedule," and told Plaintiff that if she grieved the matter Tagle would "paper" Plaintiff's employment file and place "a lot of nasty bits in the file." *Id*. ¶¶ 16-17.[1]

---

[1] Defendants submitted a 35-minute audio recording of the June 23rd meeting to show that, in their view, Plaintiff mischaracterized many of Tagle's statements. *See* Defs.' Reply at 6-7, Doc. 30; Defs.' Ex. M (Audiotape: Human Resources Meeting (June 23, 2020) (on file with the Court)). However, Defendants correctly recognize that the recording is new evidentiary material, *see* Defs.' Reply, at n.2, at 6, and, as such, Plaintiff "should be given an opportunity to respond to new material raised for the first time in the movant's reply." *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005) (citation omitted). Plaintiff did not request leave to file a sur-reply. When ruling on Defendants' summary judgment motion, the Court disregards the recording because it is new evidentiary material. However, the Court may take cognizance of the recording when ruling on Plaintiff's partial summary judgment motion because Defendants properly attached the recording to their opposition brief to Plaintiff's motion.

Tagle then placed Plaintiff on leave with pay until the start of the 193-day contract and told Plaintiff to report for the 193-day contract on July 27, 2020. *Id*. ¶¶ 9, 18.

Three days after the June 23 meeting, APS emailed Plaintiff a notification to sign stipend forms for the period of July 1 – 15, 2020, to ensure that Plaintiff would receive payment until the 193-day contract started. Defs.' UMF ¶¶ 5, 6. Plaintiff submitted her stipend forms within an hour of receiving them. *Id*. ¶ 7.

A few hours later that same day, APS sent Plaintiff a 234-day contract for the 2020-21 school year, signed by the Superintendent of APS, Defendant Jerrett Perry. Defs.' UMF ¶ 8; Pl.'s Resp. to Defs.' UMF, Doc. 26, ¶ 3. The 234-day contract stated that "[Plaintiff] shall present [herself] for duty at the times and places designated by the Superintendent of Schools or his/her authorized personnel." Defs.' Ex. D, Doc. 20 at 27. The contract also identified as its start date, "7/1/2020." *Id*. at 28. Plaintiff signed the 234-day contract that same evening. Tagle Aff. ¶ 18.

The following Monday, on June 29, 2020, Tagle emailed Plaintiff to notify her that – as discussed during the June 23 meeting - Plaintiff would be on a 193-day contract with a start date of July 27, 2020. Defs.' UMF ¶ 11. On July 7, 2020, Defendants sent Plaintiff a 193-day contract with a July 27, 2020 start date and informed her it was awaiting her signature, but Plaintiff did not sign it. *Id*. ¶¶ 12-13. Between July 1 and July 27, 2020, Plaintiff accepted administrative leave pay. *Id*. ¶ 14.

On July 27, 2020, Plaintiff reported to work for the first time since June 23, 2020. *Id*. ¶ 15. When Plaintiff returned to work, she met with Tagle, who offered her the opportunity to sign the 193-day contract and told her that if she did not sign the 193-day contract, then she would have chosen to be terminated. *Id*. ¶¶ 20, 21; Pl.'s Additional Undisputed Material Facts ¶ 31, Doc. 26 ("Pl.'s AUMF"). Plaintiff responded that she had already signed the 234-day contract and refused

4

to sign the 193-day contract. *Id.*; Defs.' UMF ¶ 22.  Plaintiff was told to leave the building and not return.  Pl.'s AUMF ¶ 32.

On August 3, 2020, Plaintiff sent Superintendent Jerrett Perry a letter asking why she was fired and asked to discuss her termination with the School Board. Pl.'s AUMF ¶ 33. No response was received. *Id*. The same day, Plaintiff also hand delivered a separate written request for a grievance on her treatment by Tagle, but no response was received. *Id*. ¶ 34.

## PROCEDURAL BACKGROUND

On September 22, 2020, Plaintiff filed a two-count complaint in New Mexico state court alleging she was unlawfully terminated and bringing claims for (1) breach of an employment contract and (2) violation of due process. On October 30, 2020, Defendants removed the complaint, claiming that the Court has original and supplemental jurisdiction over her claims. Notice of Removal, Doc. 1 at 1-2.

On September 1, 2021, Defendants moved for summary judgment on both of Plaintiff's claims.  Defs.' Mot., Doc. 20.  Defendants' motion is fully briefed. On January 31, 2022, Plaintiff moved for a partial summary judgment asking the Court to "declar[e] that Plaintiff's right to a due process hearing … was violated." Pl.'s Mot. at 1, Doc. 55. Plaintiff's motion is fully briefed.

On March 30, 2022, the Court held a hearing on both Defendants Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hamric v. Wilderness Expeditions, Inc.*, 6 F.4th 1108 (10th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it can have an impact on the outcome of the lawsuit and genuine if a rational jury could find in favor of the non-moving party based on the evidence presented." *New Mexico Oncology & Hematology*

*Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166, 1171 (10th Cir. 2021). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143-44 (10th Cir. 2013).

If the moving party bears the burden of proof on its claims at trial, it must first affirmatively show that, on all the essential elements of his claims, no reasonable jury could find for the nonmovant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J. dissenting). "Summary judgment in favor of the party with the burden of persuasion ... is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015). "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment." *Id.* The district court's role in analyzing a motion for summary judgment is to simply "assess whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1150 (10th Cir. 2005).

## LEGAL ANALYSIS

**A. Breach of Contract**

In their Motion for Summary Judgment, Defendants assert they are entitled to judgment as a matter of law as to Plaintiff's breach of contract claim because the undisputed facts show that Plaintiff materially breached the terms of her alleged contract with APS. Defs.' Mot. at 7. In the alternative, Defendants argue that they are entitled to summary judgment on this claim because the undisputed facts show that Plaintiff refused to sign the 193-day contract offered to her and

therefore no binding contract existed between the parties. *Id*. at 11. The Court disagrees on both counts.

To prevail on a breach of contract claim, a plaintiff is required to prove a valid contract, breach of the contract, and damages. *Alderete v. City of Albuquerque*, No. 33,151, 2015 WL 1143085, at *1 (N.M. Ct. App. Feb. 23, 2015) (citing *Constr. Contracting & Mgmt., Inc. v. McConnell,* 112 N.M. 371, 815 P.2d 1161 (N.M. 1991) (unpublished)). Concerning the first element – existence of a valid contract - "[f]or a contract to be legally valid and enforceable, it must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Flemma v. Halliburton Energy Servs., Inc.*, 303 P.3d 814, 822 (N.M. 2013) (internal quotation marks and citation omitted).[2] The burden of proof is on the party asserting that a valid contract exists. *Flemma*, 303 P.3d at 822. The existence of a contract between parties is generally a question of law to be decided by the trial court. *Garcia v. Middle Rio Grande Conservancy Dist.*, 99 N.M. 802, 807, 664 P.2d 1000, 1005, (N.M. Ct. App. 1983) *overruled on other grounds by Montoya v. ARAL Sec. Inc.*, 114 N.M. 354, 838 P.2d 971 (N.M. 1992). However, "when the existence of a contract is at issue and the evidence is conflicting or permits more than one inference, it is for the

---

[2] "An offer is a communication of a willingness to enter into a contract." NMRA CIV UJI Rule 13-805. "An acceptance is a statement or conduct made by one party to the other, showing that party's agreement to the terms of the other party's offer." NMRA CIV UJI Rule 13-807. "Consideration is any bargained-for benefit or advantage to [a promisor] which was a reason why [the promisor] wanted to enter into the contract, or any loss or detriment to [a promissee], which [the promisor] desired [the promissee] to suffer or which was a reason for [the promisor] to enter into the contract." NMRA CIV UJI Rule 13-814. As for the element of mutual assent, there must be "a showing of agreement by the parties to the material terms of the contract." NMRA CIV UJI Rule 13-816. "When the minds of the parties have not met on any part or provision of a proposed contract, all of its portions are a nullity." *Trujillo v. Glen Falls Ins. Co.*, 88 N.M. 279, 280, 540 P.2d 209, 210 (N.M. 1975).

finder of fact to determine whether the contract did in fact exist." *Eckhardt v. Charter Hosp. of Albuquerque, Inc.*, 124 N.M. 549, 559, 953 P.2d 722, 732 (N.M. Ct. App. 1998).

Concerning the second element of a breach of contract claim – breach – "[a] person may breach a contract by failing to perform a contractual obligation when that performance is called for (unless that performance is otherwise excused)." NMRA CIV UJI Rule 13-822 (brackets omitted). Under New Mexico law, the non-breaching party may be excused from further performance under the contract if the breach is material. *See*, *e.g.*, *KidsKare, P.C. v. Mann*, 350 P.3d 1228, 1234 (N.M. Ct. App. 2015) (citing *Famiglietta v. Ivie–Miller Enters., Inc.,* 126 N.M. 69, 966 P.2d 777) (N.M. Ct. App. 1998)). A breach is material if it results in the "failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Id*. "[T]he materiality of a breach is a specific question of fact." *Id.* (alteration in original). In addition, even if a contract is formed, the contract may be voided because of a unilateral mistake. A court "will not void a contract for a unilateral mistake except where the mistake is basic and material to the agreement, and the other party knew or reasonably should have known of the mistake." *Jacobs v. Phillippi*, 102 N.M. 449, 451, 697 P.2d 132, 134 (N.M. 1985).

1. **In this case, the Court concludes that a jury should determine the existence of a contract between the parties because the evidence is conflicting or permits more than one inference.**

Defendants argue that no valid contract existed between the parties and therefore they are entitled to summary judgment on Plaintiff's breach of contract claim. The Court agrees that a jury could certainly credit Defendants' claim that Plaintiff knew she was going to be placed on a 193-day contract, as she was told during the June 23, 2020, meeting, and that the later delivery of the 234-day contract was a clerical error. It is not disputed that during that meeting with Tagle, she was informed she would be placed on a shortened contract, that the 234-day contract was

inconsistent with the contract Tagle indicated Plaintiff would receive, and that the 234-day contract identified the "start date" as July 1, 2020. Defs. UMF ¶¶ 4, 12; Defs.' Ex. D. The evidentiary record also shows that Plaintiff reported for work on the start-date for the 193-day contract (July 27) and accepted paid leave associated with the 193-day contract. Defs.' UMF ¶¶ 14, 15. The trier of fact may conclude that this evidence suggests that an agreement was reached during the June 23rd meeting for Plaintiff to work according to the 193-day contract and that, because Plaintiff refused to sign the contract, no valid contract of employment existed between the parties.

The Court finds, however, that a reasonable jury could also reject the Defendants' contention that the delivery of the 234-day contract to Plaintiff was simply a mistake. Plaintiff submitted a school policy stating that the superintendent "will make all personnel decisions" regarding employment, Pl.'s Ex. 2, Doc. 26, 29, and therefore claims that only Superintendent Perry – not Tagle – "had the power to enter into employment contracts," and it was the Superintendent who sent her the 234-day contract for her consideration. Pl.'s Resp., Doc. 26 at 3. Plaintiff also avers that she is a unionized employee who typically works on a 234-day contract, consistent with the CBA's requirement that all custodians work 234-days, and that the Superintendent provided her with the appropriate 234-day contract, which both parties signed and executed.

In sum, the Court concludes that the evidentiary record concerning the existence of a contract presents a sufficient issue of material fact to be determined by a jury.

### 2. Assuming a 234-day contract did exist, whether Plaintiff or Defendants materially breached that contract is an issue for the jury to decide.

Defendants claim, as one theory, that if a 234-day contract existed between the parties, the undisputed facts show that Plaintiff materially breached that agreement by not returning to work on July 1, 2020, which was the "start date" identified in the 234-day contract, and thus they are

9

entitled to judgment as a matter of law. Defs.' Mot. at 7-10; *see* APS Board of Education Policy Manual, Policy G-2511, Defs.' Ex. I, Doc. 20, 36 ("Employees who are absent from work for three (3) consecutive days without good cause and without giving notice to their immediate supervisor … shall be considered as having voluntarily resigned their position by abandonment …."). Defendants assert that "the primary purpose of the 234-Day contract was to employ the Plaintiff - a purpose she undermined when she did not come to work." Defs.' Mot. at 9.

Plaintiff argues in response that she did not breach the terms of the 234-day contract when she waited until July 27, 2020 to return to work because the contract made clear she was to appear for work at the "times and places designated by the Superintendent of Schools or his/her authorized personnel" and Tagle, a deputy superintendent, had instructed her to return on that date. Pl.'s. Resp. at 10-11. Although the parties may disagree on when Plaintiff was supposed to return to work under the 234-day contract, there is no dispute that the language cited to by both parties does appear in the 234-day contract sent to Plaintiff on June 26, 2020. Ex. D, Doc. 20 at 27, 28. Given what may be viewed as conflicting provisions in the contract, the issue should be left to a jury determine the terms of the contract. *See, e.g., Segura v. Molycorp, Inc.*, 97 N.M. 13, 18, 636 P.2d 284, 289 (N.M. 1981) ("[W]hen the terms of a contract are in controversy, it is for the jury to determine the terms and it is not the province of the court to instruct the jury what the terms are.").

The Court finds that, in allowing Plaintiff all reasonable inferences from the record, a genuine dispute exists as to whether Plaintiff materially breached the alleged 234-day contract at issue in this case. More specifically, the Court concludes that a reasonable jury could find for the nonmovant on this issue, precluding summary judgment on the breach of contract claim.

**B. Procedural Due Process**

Defendants move for summary judgment on Plaintiff's due process claim brought pursuant to 42 U.S.C. § 1983, arguing that no violation of Plaintiff's due process rights occurred because

Plaintiff abandoned her position and her property interest in continued employment when she either 1) failed to appear for work on July 1, 2020, as required by the 234-day employment contract; or 2) refused to sign the 193-day contract offered to her. Defs.' Mot. at 15-17.

Plaintiff moves for partial summary judgment on the same due process claim, claiming that, as a matter of law, the failure of Defendants to provide her with a pre or post termination hearing violated her 14th Amendment right to due process. Pl.'s Mot. at 1, 8-12.

"The Fourteenth Amendment proscribes a state from, among other things, depriving a party of 'property without due process of law.'" *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000) (quoting U.S. Const. amend. XIV, § 1). When determining whether the government has deprived an individual of her due process rights, the court engages in a two-pronged inquiry. *Garcia v. City of Albuquerque*, 232 F.3d 760, 769 (10th Cir. 2000). First, the court asks did the individual possess a protected interest to which due process protection was applicable? Second, was the individual afforded an appropriate level of process? *Roberts v. Winder*, 16 F.4th 1367, 1376 (10th Cir. 2021) (citation and quotation marks omitted).

It is not disputed that, under New Mexico law and the CBA applicable to Defendants, Plaintiff had a property interest in her employment and could not be discharged without just cause and without receiving certain due process procedures. *See* N.M. Stat. Ann. § 22-10A-24 ("Before terminating a nonlicensed school employee … the local school board or governing authority shall serve the employee … with a written notice of termination."); CBA ("Employees shall not be disciplined without just cause."). However, if an employee resigns of his or her own free will, "even as a result of Defendant's actions, then they voluntarily relinquish [ ] their property interest[ ]," in which case the failure to provide a hearing may not constitute a deprivation of due process.

11

*Yearous v. Niobrara Cty. Mem'l Hosp. By & Through Bd. of Trustees*, 128 F.3d 1351, 1356 (10th Cir. 1997).

### 1. There are genuine disputed issues of material fact as to whether Plaintiff abandoned her position and/or her property interest.

Defendants argue that Plaintiff resigned her position when she failed to appear for work on July 1, 2020, as the 234-day contract required, and/or when she refused to sign the 193-day contract that was offered to her. Therefore, says Defendants, she abandoned any property interest she may have had in continued employment with Defendants, requiring summary judgment on her due process claim. As noted above, there are genuine issues of fact regarding whether the 234-day contract required Plaintiff to appear for work on July 1, 2020, or at the time and place designated by the deputy superintendent – July 27, 2020. The Court cannot therefore conclude, as a matter of law, that Defendants are entitled to judgment because Plaintiff abandoned her property interest.

As to Defendants' argument concerning the refusal to sign the 193-day contract, the Court concludes there is a genuine dispute of material fact concerning whether Plaintiff actually and/or voluntarily resigned her position when she declined to sign that agreement. According to Plaintiff, she declined to sign the 193-day contract because she was under the impression that she had already entered into a 234-day contract with Defendants, which was indisputably sent to her APS. Plaintiff further asserts that she "did *not* resign." Hutchinson Decl., ¶ 30 (emphasis added). Instead, argues Plaintiff, she was terminated by Defendants and told not to return to her employment, an assertion that is supported by the record in this case. Pl.'s AUMF ¶ 32.

The Court concludes that there is a sufficient jury question regarding whether Plaintiff resigned or otherwise abandoned the property interest she had in her employment.

### 2. The disputed issues of fact precluding summary judgment in Defendants' favor, also preclude Plaintiffs' request for summary judgment on her due process claims.

Plaintiff moves for summary judgment on her due process claim, citing to state statute and the CBA in support of her argument that she was entitled to a pre or post-termination hearing before she was terminated from her employment with Defendants. Pl.'s Mot. at 8-12. According to Plaintiff, she did not abandon her property interest in continued employment with Defendants because she did not resign her position and she presented herself for work at the time and place directed by Tagle. Defendants disagree, again asserting that no process was due to Plaintiff because she abandoned her property interest when she failed to appear for work on July 1, 2020. Defs.' Resp. at 4-5.[3]

The evidence and arguments presented by the parties on this issue, both in their briefing and at the motions hearing conducted by the Court on March 30, 2022, reaffirms the Court's determination that the issue of Plaintiff's property interest raises a number of disputed material facts, more appropriate for the jury to determine than the Court to resolve.

---

[3] In their Response to Plaintiff's Motion for Summary Judgment, Defendants argue that Plaintiff's motion should be denied as to the due process claims brought against Defendant Tagle and Defendant Perry because both of these school officials would be entitled to qualified immunity on those claims. Additionally, argue the Defendants, Plaintiff's motion as to the due process claims brought against Defendants Board of Education and Alamogordo Public Schools should also be denied because those claims are based on a theory of respondeat superior, and thus not viable Section 1983 claims under *Monell v Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The Court declines to consider the issue of qualified immunity, absent an affirmative motion on the issue, which is currently not before the Court. As to Defendants' argument that Plaintiff's due process claim are based on a theory of respondeat superior, Plaintiff clarified at the March 30, 2022, motions hearing that her claims regarding the violation of her due process rights are direct claims against the Board and APS as well as the individual defendants and are not claims brought against the Board and APS as the employer of the individual defendants. *See* Motions Hearing Transcript 69:1-25 – 70:1-4 (on file with the Court). Again, the Court will not entertain dispositive motions that are not properly before the Court.

**IT IS THEREFORE ORDERED that** the Board of Education of Alamogordo Public School District #1, Alamogordo Public Schools, Jerrett Perry and Colleen Tagle's Motion for Summary Judgment **(Doc. 20)** and Kathryn Hutchinson's Motion for Partial Summary Judgment on Due Process Claim **(Doc. 55)** are **DENIED**.

**IT IS SO ORDERED**.

 

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE